**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charlene Renee Vadovich,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-24-01234-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Charlene Renee Vadovich's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). After the SSA filed the Administrative Record (Docs. 8–9, R.) and Plaintiff filed her Opening Brief (Doc. 13, Pl. Br.), Defendant Commissioner of SSA filed a Response and Motion to Remand (Doc. 20, Def. Mot.), to which Plaintiff replied (Doc. 21, Reply).

**I.    BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on March 30, 2021, for a period of disability beginning on February 1, 2021. (R. at 38.) Her claim was denied initially on September 29, 2021, and upon reconsideration on December 14, 2022. (R. at 38.) On May 9, 2023, Plaintiff appeared by telephone before the ALJ for a hearing regarding her claim. (R. at 38, 156–88.) On June 2, 2023, the ALJ denied Plaintiff's claim. (R. at 38–51.) On March 28, 2024, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 1–3.)

1     In the Decision, the ALJ found Plaintiff had the severe impairments of osteoarthritis and obesity. (R. at 40.) Plaintiff argues in her Opening Brief that the ALJ erred by concluding her mental impairments are not severe based on an "insufficient rejection of the agency's nonexamining reviewer's opinion from Joshua Rubin, Psy.D." (Pl. Br. at 1.)

Dr. Rubin never examined or treated Plaintiff, but he reviewed Plaintiff's treatment record and completed an evaluation on July 26, 2022, in which he noted that an assessment dated October 21, 2021 reported "depression and anxiety" and Plaintiff's consumption of "7-8 beers daily"; a report on November 17, 2021 stated "alcohol abuse with [Plaintiff] planning to cut down to one beer per day"; and a report on March 24, 2022 stated Plaintiff was "still drinking 4 16oz beers daily" and "has a [history] of alcoholic cirrhosis." (R. at 216.)

Dr. Rubin noted Plaintiff had monthly psychiatry appointments from November 2021 to April 2022, "suggesting symptoms not well-controlled," and Plaintiff reported suffering from "partner abuse issues as well as continued alcohol abuse problems" but she "declined substance abuse [treatment]." (R. at 217.) Dr. Rubin concluded that "signs and symptoms of depression are present" but signs of PTSD are lacking. (R. at 217.) He also stated Plaintiff "has been drinking on an ongoing basis, declined specific [treatment] for this, and there is no discrete period of sobriety," so "her best level of functioning must be considered." (R. at 217.) He observed that the "case is most notable for alcohol abuse." (R. at 217.) Dr. Rubin ultimately opined that Plaintiff was moderately limited in the ability to maintain concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. at 222.) He also opined that Plaintiff "is able to carry out one to two step instructions, follow simple work-like procedures, and make simple work-related decisions." (R. at 222.)

. . .

In his Decision, the ALJ discounted Dr. Rubin's assessment of Plaintiff's functional limitations as inconsistent with the evidence of record that noted Plaintiff's "intact cognition," "fair to normal memory and concentration, the ability to follow a three-step command, full orientation and normal behavior and mood." (R. at 48.) Among others, the ALJ cited the September 22, 2021 assessment of examining psychologist Dustin Howard, Psy.D., who opined that Plaintiff suffered from "unspecified alcohol-related disorder" and "unspecified cannabis-related disorder." (R. at 48, 1105–06.) Although not explicitly noted by the ALJ, Dr. Howard's examination report stated that "[n]o overt or clinically significant signs of depression, anxiety, or any other emergent or chronic mental health condition were observed" in Plaintiff and "additional documentation does not provide evidence of her current or previous mental health treatment." (R. at 1106.) Dr. Howard thus declined to diagnose Plaintiff with a depressive order and noted instead that Plaintiff "is actively using both alcohol and cannabis which is likely for self-medication purposes." (R. at 1106.) Ultimately, Dr. Howard concluded that Plaintiff's "cognitive abilities remain intact as evidenced by her score of 25/30 on the Mini-Mental Status Exam." (R. at 1106.)

Plaintiff now argues the ALJ erred by not finding Plaintiff had severe impairments of bipolar disorder, PTSD, and depression based on Dr. Rubin's review of Plaintiff's medical records. (Pl. Br. at 18–23.) In response, the Commissioner asks the Court to remand this matter for the ALJ to fill the gap between the opinions of Dr. Rubin and Dr. Howard, which constitutes an outstanding issue for which further proceedings are necessary.[1] (Mot. at 5–7.) In reply, Plaintiff states the ALJ already resolved any conflict but did so in favor of Dr. Howard's opinion without sufficient reason supported by evidence in the record. (Reply at 6.) Plaintiff underscores the fact that Dr. Rubin conducted his records review in July 2022, after Plaintiff had mental health treatment, and Dr. Howard

---

[1] The Commissioner also argues that, in terms of Plaintiff's physical limitations, the ALJ properly weighed the examination findings of Dr. Robert Gordon as well as the other medical source evidence, but if the Court disagrees, remand for further proceedings, not payment of benefits, is the appropriate remedy. (Mot. at 7–10.) Because the Court agrees with the Commissioner with regard to his principal argument—the ALJ inadequately addressed Plaintiff's alleged mental and related limitations—the Court need not reach the parties' arguments with regard to Plaintiff's alleged physical limitations.

- 3 -

examined Plaintiff in September 2021, before that treatment. (Reply at 6.) Under the credit-as-true rule, Plaintiff thus asks the Court to remand not for further consideration but for a calculation and payment of disability benefits. (Reply at 8, 11.)

## II. LEGAL STANDARD

Generally, the ordinary remand rule—providing that a case should be remanded for further proceedings upon a finding of material error by the ALJ—applies in Social Security cases. The credit–as–true standard, if applied, results in a remand of Plaintiff's case for a calculation and payment of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). It applies if each part of a three–part standard is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*. Remand for a calculation and payment of benefits is only appropriate when the Court is left with no uncertainty that the claimant is disabled under the Act. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014).

## III. ANALYSIS

Although both parties request remand of this case to the SSA, upon review of the medical evidence and Plaintiff's testimony, the Court agrees with the Commissioner that uncertainty remains as to whether Plaintiff is disabled under the Act, precluding application of the credit-as-true rule here. Plaintiff argues that the ALJ erred in weighing Dr. Rubin's evaluation of Plaintiff and in not finding Plaintiff's claimed mental impairments of bipolar disorder, PTSD, and depression to be severe (Pl. Br. at 18–23), and the Commissioner contends that the ALJ's evaluation and comparison of the opinions of Dr. Howard and Dr. Rubin was inadequate, requiring further evaluation (Mot. at 5–7).

To begin with, neither Dr. Howard nor Dr. Rubin concluded Plaintiff suffered from biopolar disorder or, correspondingly, was limited in her functional capacity as a result. Plaintiff alleges a disability onset date of February 1, 2021. In his examination of Plaintiff

on September 22, 2021, Dr. Howard's notes do not indicate that Plaintiff even mentioned bipolar disorder, and Dr. Howard noted that the medical records "[do] not provide evidence of her current or previous mental health treatment." (R. at 1106.) In his review of the medical records on July 26, 2022—after Plaintiff had undergone some mental health treatment—Dr. Rubin mentions that bipolar disorder was indicated in a treatment note, but he does not find signs and symptoms of bipolar disorder present. (R. at 217.) The Court also cannot find any mention of bipolar disorder in the citations attached to the single time the ALJ mentioned bipolar disorder in his Decision, "Exs. 8F/14, 19; 9F/44." (R. at 42; R. at 1122, 1127, 1177.) For her part, Plaintiff presents a two-page argument about the effects of bipolar disorder without providing a single citation to the record indicating she actually has bipolar disorder. (Pl. Br. at 19–21; 2–8.) In sum, the Court finds no merit to Plaintiff's argument that the ALJ erred by failing to consider the effects of bipolar disorder; no disability finding can be based on crediting as true a fact that is not supported by the record.

Likewise, neither Dr. Howard nor Dr. Rubin noted limitations resulting from PTSD. Dr. Howard again makes no mention of PTSD (R. at 1102–06), and while Dr. Rubin cites a treatment note indicating a PTSD diagnosis, he sates, "PTSD is also listed but signs/[symptoms] are lacking" (R. at 217). The ALJ also did not err in declining to consider the effects of PTSD in his evaluation, and Plaintiff's functional capacity and disability determinations cannot properly incorporate limitations due to PTSD.

The sole material difference between the narrative evaluations of Plaintiff's mental health conditions by Dr. Howard and Dr. Rubin is that Dr. Rubin concludes that "signs and symptoms of depression are present." (R. at 217.) The ALJ found Dr. Rubin's opinion that, as a result, Plaintiff would be limited in following work-like procedures and making work related decisions to be "inconsistent with the evidence of record" because she "scored 25 out of 30 on the mini mental status exam indicating intact cognition" and because other records showed "normal memory and concentration, the ability to follow a three-step command, full orientation and normal behavior and mood." (R. at 48.) The ALJ also found Dr. Howard's opinion persuasive based on Dr. Howard's actual examination of Plaintiff

seven months after her alleged disability onset date. (R. at 48.) Although the Commissioner now requests remand for further proceedings so the ALJ can adequately resolve the opinions of Dr. Rubin and Dr. Howard, the Court would find that the ALJ adequately weighed the two opinions, considering the supportability and consistency factors, with respect to Plaintiff's reports of depression and any resulting impact on her mental functional capacity.

However, where the ALJ's opinion is lacking is in its consideration of Plaintiff's consistently documented alcohol and cannabis abuse, or alcohol-related and cannabis-related disorders, for which the records show she has refused treatment. As stated *supra*, upon examination, Dr. Howard diagnosed Plaintiff with "unspecified alcohol-related disorder" and "unspecified cannabis-related disorder" with "[n]o overt or clinically significant signs of depression, anxiety, or any other emergent or chronic mental health condition"; noted that she "is actively using both alcohol and cannabis which is likely for self-medication purposes"; and gave "[n]o prognosis . . . as the diagnosis is substance related." (R. at 1105–06.) For his part, Dr. Rubin also stated Plaintiff "has continued alcohol abuse problems" but she "declined substance abuse [treatment]"; she "has a history of alcoholic cirrhosis"; she "has been drinking on an ongoing basis, declined specific [treatment] for this, and there is no discrete period of sobriety" so "her best level of functioning must be considered"; and this "case is most notable for alcohol abuse." (R. at 216–17.)

In his Decision, the ALJ mentioned Plantiff's history of alcohol abuse and related alcoholic cirrhosis, but he focused his evaluation on the possible physical effects of these conditions. (R. at 42.) On remand to the SSA, which both parties request, the ALJ must fully consider the effects of Plaintiff's alcohol and cannabis abuse, and refusal of treatment therefor, in the context of the Act and its regulations. But based on the evidence in the record, the Court is left with serious doubt as to whether Plaintiff is disabled under the Act, and thus remand for a calculation and payment of benefits is not warranted.

. . .

1  **IT IS THEREFORE ORDERED** granting Defendant Commissioner of Social Security Administration's Motion to Remand (Doc. 20) and remanding this case to the Social Security Administration for further proceedings. On remand, the ALJ must fully consider the effects of Plaintiff's alcohol and cannabis abuse, and refusal of treatment therefor, in the context of the Social Security Act and the regulations implementing it.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this Order and close this case.

Dated this 5th day of June, 2025.

Honorable John J. Tuchi
United States District Judge